**Joseph A. Ruta** (N.J. Bar No. *049481992*)
Gregory Byrnes (N.J. Bar No. 316122020)
ANDERSON LAW
104 W 27th Street, 11th Floor
New York, NY 10001
jruta@lawnynj.com
Gregory@andersonlaw.nyc
*Local Counsel for Plaintiffs*

F. Skip Sugarman (pro hac vice)
skip@sugarman-law.com
Sophie Degani (pro hac vice)
sophie@sugarman-law.com
Jadyn Taylor Dixon (pro hac vice forthcoming)
jadyn@sugarman-law.com
SUGARMAN LAW, LLP
154 Krog Street NE, Ste. 190
Atlanta, GA 30307
(404) 495-4811
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

| | |
|---|---|
| STEPHEN VERSKA; KIMBERLY VERSKA; SOPHIA VERSKA; DAVID VERSKA; SHARKDIVER CONSULTING, INC.; and ANDREW ZIFFER,<br><br>Plaintiffs,<br><br>v.<br><br>MARCELLO FOLLANO,<br><br>Defendant. | CIVIL ACTION NO. **2:26-cv-11367**<br><br>Motion Day: November 16, 2026 |

**TABLE OF CONTENTS**

**INTRODUCTION……………………………………………………………1**

**ARGUMENT AND CITATION TO AUTHORITY…………………………..2**

**A. Defendant's Default Was Willful and Culpable…………………...…..3**

**B. Plaintiffs Would Be Prejudiced by Setting Aside the Defaults….……..7**

**C. Defendant Has Failed to Establish a Meritorious Defense…………….9**

**CONCLUSION……………………………………………………………….15**

# TABLE OF AUTHORITIES

## CASES

Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557 (D.N.J. 2002) ........ 16
Budget Blinds, Inc. v. White, 536 F.3d 244 (3d Cir. 2008) ........ 2
Chamberlain v. Giampapa, 210 F.3d 154, (3d Cir. 2000) ........ 3
Derek Smith Law Grp., PLLC v. Carson, No. 25-1238, 2025 WL 3296301 (E.D. Pa. Nov. 26, 2025) ........ passim
Feliciano v. Reliant Tooling Co., 691 F.2d 653 (3d Cir. 1982) ........ 8
Hritz v. Woma Corp., 732 F.2d 1178 (3d Cir. 1984) ........ 3
In re Rockefeller Ctr. Props., 311 F.3d 198 (3d Cir. 2002) ........ 14
Marks v. Struble, 347 F.Supp.2d 136 (D.N.J. 2004) ........ 13
Mike Rosen & Assocs. v. Omega Builders, Ltd., 940 F. Supp. 115 (E.D. Pa. 1996) ........ 14
Mrs. Ressler's Food Products v. KZY Logistics LLC, 675 F. App'x 136 (3d Cir. 2017) ........ 4, 11
Registrar & Transfer Co. v. Dir., Div. of Tax'n, Dep't of Treasury, 166 N.J. Super. 75 (App. Div. 1979) ........ 15
Sadis & Goldberg, LLP v. Banerjee, No. 19-1682, 2020 WL 4350238 (W.D. Pa. July 28, 2020) ........ 9
Sunoco, Inc. (R & M) v. Glob. Recycling & Demolition, LLC, 300 F.R.D. 253 (E.D. Pa. 2014) ........ 11
U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984) ........ 11, 12, 17

## STATUTES

6 Del. C. 18-1101 ........ 14

## RULES

Fed. R. Civ. P. 8 ........ 13

# PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

## I. INTRODUCTION

Mr. Follano's admitted default was not an accident, mere oversight, or even excusable neglect. It was, and remains, part of a years-long strategy by which Mr. Follano and the Late Stage entities he controls have sought to keep for themselves the SpaceX securities they acquired on behalf of innocent investors like Plaintiffs. Mr. Follano understands that if he can delay these proceedings even a short while longer–past the December 8, 2026, date on which the transfer restrictions on those shares lift–it will become all but impossible for Plaintiffs to recover the securities that are rightfully theirs. That is the precise purpose of Mr. Follano's delay tactics in this Court. In fact, it would be entirely consistent with Mr. Follano's demonstrated bad faith if he had deliberately engineered his own default as yet another means of delaying these proceedings, cynically exploiting this Court's well established preference for resolving cases on their merits rather than by default.

None of this is the mere argument of counsel. It is the documented history of Plaintiffs' dealings with Mr. Follano over more than two years, during which time he has caused the Late Stage entities to ignore one tribunal after another—a months-long arbitration before the American Arbitration Association, in which Late Stage never appeared; two separate actions in the State of Delaware; and

subsequent collection efforts in both Delaware and Florida. Mr. Follano has been served with all relevant pleadings and orders in each of these cases, and at every turn, Mr. Follano's strategy has been to do nothing and run out the clock. His default in this action is simply a continuation of that intentional litigation strategy.

What is different here is only that Plaintiffs have named Mr. Follano personally. That is why, after ignoring every prior proceeding, he has at last appeared—not to defend the case on its merits but to buy the same delay that has served him so well everywhere else. Mr. Follano's opposition brief confirms this inescapable conclusion–he offers no defense to the central fact of this case, that he is withholding Plaintiffs' SpaceX shares for his own benefit. The buck can stop here in this Court. Mr. Follano cannot meet the standard for avoiding default judgment. His default was willful, he has no meritorious defenses to the claims Plaintiffs have brought, and the prejudice to Plaintiffs–the imminent and permanent loss of their SpaceX shares–is grave. For the reasons set forth hereinbelow, the Court should enter default judgment against Mr. Follano.

## II. ARGUMENT AND CITATION TO AUTHORITY

Although it is true that default judgments are generally disfavored, courts "cannot apply this presumption against default judgments if doing so would be inconsistent with the Federal Rules of Civil Procedure or . . . case law interpreting these Rules." Budget Blinds, Inc. v. White, 536 F.3d 244, 258 (3d Cir. 2008). The

preference for resolving disputes on the merits is not absolute and is appropriately disregarded where a defendant's default is the product of willful or strategic conduct. Hritz v. Woma Corp., 732 F.2d 1178, 1184 (3d Cir. 1984) (recognizing default judgment shall lie against a party who "callously disregarded repeated notices of judicial proceeding"); Derek Smith Law Grp., PLLC v. Carson, No. 25-1238, 2025 WL 3296301, at *5-6 (E.D. Pa. Nov. 26, 2025).

The facts of this case supply the Court with the precise circumstances for which the default rule was written. All of the factors relevant to the inquiry are easily established here: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct" taken willfully and in bad faith. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

## A. Defendant's Default Was Willful and Culpable.

Mr. Follano's behavior in response to this litigation is the textbook case of willful and culpable default. The Third Circuit has recognized that culpable conduct is established through the "willfulness" or "bad faith" of a nonresponding party. Hritz, 732 F.2d at 1182-83. Although mere negligence is insufficient, "[r]eckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." Id. at 1183. Moreover, culpability exists where a defendant merely fails to seek an extension or adequately explain

their non-responsiveness. Mrs. Ressler's Food Products v. KZY Logistics LLC, 675 F. App'x 136, 142 (3d Cir. 2017).

Courts may also consider a defendant's prior litigation conduct in evaluating culpability. Derek Smith Law Grp., 2025 WL 3296301, at *6. In Derek Smith Law Grp., the defendant sought to vacate a default judgment, arguing that his failure to respond resulted from difficulty retaining counsel. The court rejected that explanation, noting the defendant's extensive history of misconduct in other proceedings, including several cases in which he had been sanctioned for his conduct or engaged in "complete nonresponsiveness." Id. Considering the defendant's prior conduct alongside his failure to defend the action, the court found a pattern of conduct supporting culpability and declined to vacate judgment. Id.

Similarly, Mr. Follano argues that his failure to respond to the Complaint was merely the result of difficulties in securing local counsel and that his counsel's October 14, 2026, letter demonstrated an intention to defend this action. (Defendant's Opposition to Motion for Default Judgment at 7-9.) He also attempts to distance himself from the Late Stage entities, emphasizing that he was not personally a party to the arbitration or subsequent proceedings. (Opp. at 9.)

Defendant's limited account of the parties' history does not come close to painting a complete picture. As in Derek Smith, the Court must consider Mr. Follano's prior litigation conduct in determining his willfulness and culpability.

For over two years, Plaintiffs have chased Mr. Follano from one forum to the next, and at every turn he, through the Late Stage entities, has ignored the proceedings entirely. Mr. Follano's has established a complete disregard for the legal process, and this default is merely the latest iteration in that very clear pattern.

The history of this dispute is particularly relevant given Defendant's attempt to separate himself from the Late Stage entities. As alleged in the Complaint, Mr. Follano founded Late Stage, served as its Managing Partner and President, and exercised control over the entities responsible for Plaintiffs' investments. (Complaint ¶¶ 8, 22, 64-67.) Thus, although Defendant was not personally named in the earlier proceedings, his connection to the entities involved in Plaintiffs' enforcement efforts is completely indistinguishable from his individual capacity. Indeed, further evidencing his bad faith, in the same breath that he disclaims responsibility for the Late Stage entities' litigation conduct, Mr. Follano has announced his intention to compel "nonsignatory enforcement" of arbitration under an agreement he concedes he never signed in his individual capacity. (Opp. at 7.) Mr. Follano cannot be indistinguishable from Late Stage when invoking its arbitration provision, yet a stranger to Late Stage when answering for its years of calculated nonparticipation.

Against this background, Defendant's reliance on his counsel's October 14 letter is particularly unpersuasive. Whatever intentions the October 14 letter

conveyed, it came a week after Mr. Follano's deadline to respond had already expired, and it did nothing to cure his default. (Lawlor Declaration ¶ 4.) The letter was, at most, a late, legally meaningless announcement that Mr. Follano intended to seek arbitration.

More importantly, Defendant's own timeline demonstrates substantial periods of unexplained inaction. Mr. Follano was served with the Complaint on September 16, 2026, making his response due October 7. (Affidavit of Service.) By counsel's own account, however, Mr. Follano waited more than two weeks, until October 1, 2026 to even notify counsel of the suit, leaving only six days before his deadline. (Lawlor Decl. ¶ 2.) Counsel then did not contact Plaintiffs until *two weeks later* (October 14, 2026) which was also a full week after expiration of the answer deadline. (Id. ¶ 4.)

The delay only continued from there. Mr. Follano did not retain local counsel until October 22, after default had been entered and Plaintiffs had moved for default judgment; counsel did not contact Plaintiffs until October 29; and counsel did not enter an appearance or request relief from the Court until November 3, by which point Mr. Follano had been in default for nearly a month and his time to oppose the motion had itself expired. (Id. ¶¶ 11-13.) Neither Mr. Follano nor his counsel explains any of this—why he sat on the Complaint for two weeks before contacting counsel, why no extension was sought before October 6,

or why the unavailability of one prospective local attorney foreclosed all other options.

Mr. Follano portrays these events as mere scheduling difficulties, but the surrounding circumstances reveal a broader pattern of disregard for litigation obligations. See Derek Smith Law Grp., 2025 WL 3296301, at *6. The entities under Mr. Follano's control repeatedly failed to participate in proceedings concerning Plaintiffs' investments, Plaintiffs' communications with Mr. Lawlor went unanswered, and Mr. Follano himself failed to respond despite having notice and access to counsel. His continued delays even after retaining local counsel further demonstrate conduct exceeding mere negligence.

**B. Plaintiffs Would Be Prejudiced by Setting Aside the Defaults.**

Prejudice is established when a plaintiff's ability to pursue the claim has been hindered by "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982). In determining whether such prejudice exists, the Third Circuit has considered a defendant's broader history of failing to respond to claims where that conduct impaired the plaintiff's ability to identify and pursue responsible parties. Hritz, 732 F.2d at 1182–83. Importantly, courts in this District and the Third Circuit routinely recognize that a defendant's history of disregarding judicial proceedings and dissipating assets may establish an increased

potential for fraud or collusion sufficient to establish prejudice. See, e.g., Sadis & Goldberg, LLP v. Banerjee, No. 19-1682, 2020 WL 4350238 (W.D. Pa. July 28, 2020).

Here, Mr. Follano's delay threatens Plaintiffs with real and irreparable prejudice. Mr. Follano's default threatens to impair Plaintiffs' ability to establish the ownership and disposition of the specific SpaceX shares underlying their claims. With each passing week, the December 8 expiration of the share lock-up period draws nearer, after which the very SpaceX shares Plaintiffs seek to recover are very likely to be sold into the public market and moved beyond tracing or recovery. (Verska Certification of Proof at ¶ 17.) Had Mr. Follano timely answered, Plaintiffs could have sought prompt, targeted discovery concerning the ownership, assignment, and subsequent disposition of the shares before the expiration of the lock-up period and could have used this discovery to seek injunctive relief. Mr. Follano knows this. Thus, he has purposely and intentionally dragged his feet, as he has done in all legal proceedings related to the SpaceX investments.

Moreover, prosecuting Plaintiffs' claims before expiration of the December 8th lockup period goes beyond establishing Plaintiffs' damages; it goes to the heart of Plaintiffs' proof. In this case, it is substantially more difficult to establish the chain of title upon which Plaintiffs' claims are predicated if the holder of the final

assignment decides to trade on the public market. Evidence regarding the chain of ownership, including, *inter alia*, assignments of shares to and from Late Stage to establish what specific ownership interests Late Stage ever held (as relevant to its misrepresentations), when such assignments were made (as relevant to *scienter*), and inter-party transfers from Late Stage entities to Mr. Follano personally (as evidence of fraudulent transfer), is therefore crucial.

Once the relevant restricted shares become eligible for public-market trading, however, further sales are very likely to place those shares into the hands of unidentified purchasers through market intermediaries, thereby frustrating Plaintiffs' ability to trace the particular holdings and their proceeds. The threatened impairment therefore concerns proof of Defendant's alleged liability, not merely proof of Plaintiffs' losses, as Defendant has argued.

**C. Defendant Has Failed to Establish a Meritorious Defense.**

Far from establishing a meritorious defense, Mr. Follano merely offers a catalog of partial, inchoate arguments that never reach the heart of this case. These arguments fall far short of the complete defense required in the Third Circuit and preclude Mr. Follano's attempt at escaping default judgment.

The "threshold question" in determining whether default judgment is appropriate is whether the defendant has asserted a meritorious defense. U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). In the Third

Circuit, "[t]he showing of a meritorious defense is accomplished when [the] 'allegations of defendant's answer . . . would constitute a **complete defense** to the action.'" Sunoco, Inc. (R & M) v. Glob. Recycling & Demolition, LLC, 300 F.R.D. 253, 257 (E.D. Pa. 2014) (emphasis supplied) (internal citation omitted). A defense qualifies as "complete," only where the defendant supports it with "specific facts beyond simple denials or conclusionary statements" that, if established at trial, "would constitute a complete defense to the action." Mrs. Ressler's Food Prods. v. KZY Logistics LLC, 675 F. App'x 136, 140-41 (3d Cir. 2017). Indeed, "there would be no point in setting aside the default judgment . . . if [the defendant] could not demonstrate the possibility of his winning." $55,518.05, 728 F.2d at 195.

In Derek Smith, for example, the defendant alleged that certain claims were time-barred and that a fraud count was not pleaded with particularity, but he offered no defense at all to the plaintiff's breach of contract count, which independently accounted for a substantial portion of the damages. 2025 WL 3296301 at *3-5. That omission was fatal because the defendant "allege[d] only a partial defense," and the court held he had not shown allegations that, "if established on trial, would constitute a complete defense to the action." Id. at *5 (quoting $55,518.05, 728 F.2d at 195).

Here, measured against that standard, Mr. Follano comes nowhere close. This case reduces to a core allegation Mr. Follano cannot and does not dispute—Plaintiffs are owed specific SpaceX shares that Mr. Follano has refused to deliver. Mr. Follano offers no defense of any kind to that core allegation. Instead, Mr. Follano makes a series of what are designed to look like technical defenses to each of the individual claims, none of which could constitute a complete defense to recovery. What Mr. Follano has presented is thus the *sine qua non* of a partial defense as that term is defined by courts in the Third Circuit.

First, Defendant contends that Plaintiffs have not pleaded fraud with the particularity Rule 9(b) requires. (Opp. at 4-5.) That argument fails on its own terms. Rule 9(b) requires only that a plaintiff plead the circumstances constituting fraud with enough specificity to place the defendant on "'notice of the precise misconduct with which they are charged[.]'" Marks v. Struble, 347 F.Supp.2d 136, 146 (D.N.J. 2004) (internal citations omitted). A plaintiff need not plead the "date, place or time" of the fraud, so long as it uses some "'means of injecting precision and some measure of substantiation into [its] allegations.'" Id. at 148.

Here, the circumstances constituting fraud are highly documented–Plaintiffs' claims rest on the written materials attached to the Complaint which constitute a "binding record of what each investor had purchased and owned." (Compl. ¶¶ 25-29.) Those documents very clearly supply the particularity required by Rule 9(b):

the speaker (Late Stage, acting through Follano, who executed or authorized the acceptance letters "on behalf of Late Stage" (id. ¶¶ 22, 65-67); the representation (ownership of a specified quantity of SpaceX shares at a specific price); the time and place (the dated subscription documents and the investor portal); and the manner in which the representations were false (the shares were never credited in full and have never been delivered) (id. ¶¶ 31-50; 74-76). Any additional factual detail regarding Mr. Follano's fraud is information he alone holds, which relaxes the Rule 9(b) particularity standard. Cf. In re Rockefeller Ctr. Props., 311 F.3d 198, 216 (3d Cir. 2002) ("[I]n applying Rule 9(b) courts should be 'sensitive' to situations . . . where certain facts are "peculiarly within the defendant's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed.").

Second, Mr. Follano contends that the operating agreement authorized affiliate markups, and therefore, the existence of a markup does not establish concealment. (Opp. at 5.) Even accepting that incorrect premise, it is not a defense to this action. Whether the agreement permitted Late Stage to price shares at a markup says nothing about the conduct at the heart of Plaintiff's claims—that Mr. Follano credited Plaintiffs with fewer shares than the confirmations reflected, and then failed to deliver any shares, or their value, at all. A contractual permission to mark up the price of shares that are *delivered* is no answer to the Complaint's allegations that the shares were **never delivered**. At most, the

markup provisions may bear on the measure of damages, but a defense that only goes to the "mitigation of damages" is "not a complete defense" to liability. Mike Rosen & Assocs. v. Omega Builders, Ltd., 940 F. Supp. 115, 119 (E.D. Pa. 1996).[1]

Next, Mr. Follano recasts the conversion claim as a contract debt, relying on authority that a claim for money owed under a contract is not conversion. (Opp. at 6.) In this case, however, Plaintiffs seek specific, identifiable property—the pre-IPO SpaceX shares which were already ordered to be transferred to Plaintiffs. (Compl. ¶¶ 127-139.) New Jersey law recognizes that a "document evidencing stock ownership [] is considered tangible personal property," and therefore, the ownership and possession rights underlying the conversion claim is sufficiently identifiable. Registrar & Transfer Co. v. Dir., Div. of Tax'n, Dep't of Treasury, 166 N.J. Super. 75, 80 (App. Div. 1979).

Mr. Follano then attempts to invoke the economic-loss doctrine against Plaintiffs' misrepresentation claims. (Opp. at 6.) That doctrine is completely inapplicable to this case. New Jersey's economic-loss doctrine bars only tort claims that duplicate a party's contractual expectations; it does not bar fraud in the inducement, which rests on misrepresentations extrinsic to the contract's

---

[1] Mr. Follano's argument that Plaintiffs' unjust-enrichment claim is barred because a valid contract governs their investments is self-defeating, as the Complaint pleads unjust enrichment in the alternative, as is expressly permitted by Rule 8. See Fed. R. Civ. P. 8(d)(2).

performance. Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557 (D.N.J. 2002). Mr. Follano all but concedes that point in his Response, noting that the economic loss doctrine would act as a defense only "*to the extent* the alleged misrepresentations concern contractual performance rather than an independent duty." (Opp. at 6) (emphasis supplied).

Mr. Follano then points to various provisions in the agreements, thinly and unsuccessfully arguing that they may provide him a contractual defense to the allegations of the Complaint. (Opp. at 6-7.) These provisions defeat nothing. First, Mr. Follano cites Section 5.5.2, which expressly excepts "fraud, willful misconduct[, and] gross negligence,"—precisely the conduct Plaintiffs allege, so it cannot act as a bar to the Complaint. Nor can the fiduciary waiver bear the weight Mr. Follano attempts to place on it, because Delaware law permits an LLC agreement to restrict or eliminate fiduciary duties, but it "may not eliminate the implied covenant of good faith and fair dealing" or exculpate a "bad-faith violation" of such duties. See 6 Del. C. § 18-1101(c), (e).

Next, Mr. Follano asserts that Plaintiffs' New Jersey securities claim may be time-barred. (Opp. at 7.) Even assuming that allegation could defeat the securities count, it does not help Mr. Follano. The relief Plaintiffs seek rests largely on their conversion and fraud claims, to which Mr. Follano offers no defense. See Derek Smith Law Grp., 2025 WL 3296301, at *5. Even if it were successful, the

limitations defense would nevertheless leave the claims that support the relief Plaintiffs seek in place, and thus gives Mr. Follano no "possibility of his winning." $55,518.05, 728 F.2d at 195.

Finally, Mr. Follano's purported invocation of the arbitration clause is not a defense to the merits and is completely untenable on its own facts. In fact, Mr. Follano's invocation of this arbitration clause would be laughable were this not such a serious case. Plaintiffs *themselves* have already invoked the very arbitration clause on which Mr. Follano relies *as it relates to the underlying claims in this case.* Plaintiffs then completed the arbitration process, at their own expense, which resulted in the Final Award which was subsequently confirmed by the Delaware Court of Chancery. Late Stage defaulted in the arbitration and then completely ignored the resulting judgment. (Compl. ¶¶ 51-57.) Thus, Mr. Follano's suggestion that he intends to invoke an arbitration provision contained in contract to which he is not a party as it relates to claims that have *already been arbitrated* not only fails to demonstrate a complete defense, it is patently frivolous. Indeed, that Mr. Follano has even made this argument in a filing before this Court illustrates the bad faith with which he continues to operate.

## III. CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and enter default judgment against Mr. Follano.

Dated November 13, 2026.

Respectfully submitted,

*/s/ F. Skip Sugarman*
F. Skip Sugarman (pro hac vice)
skip@sugarman-law.com
Sophie Degani (pro hac vice)
sophie@sugarman-law.com
Jadyn Taylor Dixon (pro hac vice forthcoming)
jadyn@sugarman-law.com
SUGARMAN LAW, LLP
154 Krog Street NE, Ste. 190
Atlanta, GA 30307
(404) 495-4811